IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Larry D. Reid<br>225 Lake Summit View<br>Atlanta, Georgia 30342<br><br>and<br><br>Larry Reid Live, L.L.C.<br>780 Morosgo Drive, 244224<br>Atlanta, Georgia, 30342<br><br>          Plaintiffs,<br><br>– vs –<br><br>Darryl Moore<br>24401 Russell Ave.<br>Euclid, Ohio 44123<br><br>          Defendant. | Case No.<br><br><br>Judge: _____<br><br><br>Verified Complaint for Damages,<br>Permanent Injunctive Relief, Declaratory<br>Judgment, Attorney Fees & Costs<br><br>Jury Demand Endorsed Hereon |

**– INTRODUCTION –**

1.     This is a diversity action brought under the laws of the State of Ohio, seeking compensatory and punitive damages, a declaratory judgment, permanent injunctive relief, attorney fees and costs arising out of a persistent, deliberate, and unprovoked campaign of online defamation and harassment against the Plaintiff and his businesses.

2.     Larry D. Reid ("Reid") is an ordained minister, author, songwriter, gospel recording artist, a commentator on matters involving religious matters, and an online personality whose weekly YouTube videocasts reach more than 100,000 subscribers. Since at least December 2020, Mr. Reid has been the subject of an obsessive, vitriolic and threatening series of YouTube videos posted by the Defendant, Darryl Moore, who is a stranger to him.

3.      In rambling videos and live video streams that sometimes exceed two hours in length, Moore has repeatedly defamed Reid, falsely accused him crimes ranging from tax fraud to child molestation, expressed his desire to kill him, threatened to track Reid down at his Atlanta home (a threat on which Moore made good) and urged Reid's subscribers, directly and through innuendo, to unsubscribe from his videocasts. The videos posted by Moore have been viewed extensively, some more than 19,000 times, and his defamatory statements have, among other things, caused Reid and his associated businesses to lose subscribers and revenue.

– PARTIES –

4.      Plaintiff **Larry D. Reid** ("**Reid**") is, and at all times relevant was a natural person, and a resident and citizen of the State of Georgia, with both his residence and his principal place of business in the City of Atlanta, in Fulton County, Georgia.

5.      Plaintiff **Larry Reid Live, L.L.C.** ("**LRL**") is, and at all times relevant was, a limited liability company organized and doing business under the laws of the State of Georgia, with its principal place of business in Atlanta, Fulton County, Georgia. LRL neither has, nor at any time relevant had, branches, offices, or facilities in the State of Ohio. Reid is its sole member.

6.      Defendant Darryl Moore ("**Moore**") is a natural person and a resident and citizen of the State of Ohio, with his residence in the City of Euclid, Cuyahoga County, Ohio. Moore is not now, nor was at any time relevant, a citizen or resident of the State of Georgia.

– JURISDICTION & VENUE –

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(1) in that the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), and the action is between citizens of different states, in that all Plaintiffs reside or operate solely in the State of Georgia, and the sole Defendant resides only in the State of Ohio.

8.     Venue in this Court is proper pursuant to 29 U.S.C. § 1391 (b)(1) in that the Defendant resides within this judicial district, and in the Eastern Division, pursuant to L.R. Civ. 3.8 (a) in that the Defendant resides within Cuyahoga County, Ohio.

– FACTS COMMON TO ALL CLAIMS –

9.     As outlined in the summary above, Reid is a minister, songwriter, gospel recording artist, a commentator on matters involving religious matters, and an online personality. Each week he produces and appears in one or more streamed YouTube video programs on a YouTube channel called Larry Reid Live. The programs vary in length, but in the main tend to run an hour or more. As of 12 May 2021, the Larry Reid Live YouTube channel had 108,000 subscribers.

A.     Larry Reid Live and Its Role in Reid's Commercial Endeavors

10.     Episodes of Larry Reid Live initially stream live, though past episodes remain available on the Larry Reid Live Channel and may be viewed after they first stream. Episodes generally follows a talk show format, with monologues by Reid, discussions on a variety of topics described below, remote interviews with guests, music, and live calls with viewers, who engage with Reid on the topics presented on the program. During each episode, viewers may also comment online, and those comments appear in real time as a text stream that appears beside the video.

11.     Reid discusses a variety of topics most of which center on faith, spirituality, the Gospels, personal and spiritual growth, and events and affairs in the faith communities familiar to Reid and his viewers.

12.     Reid does so in a humorous and relatable way intended to be accessible to a broad audience. Reid reviews books, discusses music, and comments on personalities and trends in the ministry, and events in the church, including what he considers the pernicious effects of greed, hypocrisy, and scandal. He also discusses general and non-religious matters, such as current events, cultural happenings, controversial topics and politics generally.

- 3 -

13.     Larry Reid Live (the online video series, hereinafter "the Program," to distinguish it from LRL, the entity) began streaming in essentially its present format in June 2016. It is freely available on YouTube and promoted in various ways, including by an associated business page on Facebook. The Program has, since May 2019, also provided additional, exclusive content to paid subscribers. So far, approximately three hundred (300) episodes have aired.

14.     The Program is supported by its Patreon subscribers and by advertising. The program generates considerable revenue, well in excess of $100,000.00 monthly. The plurality of this is generated through some 7,900 Patreon subscriptions, which account for a substantial fraction of LRL's gross revenue.

15.     Episodes of the Program also contain advertisements, embedded in the video stream by YouTube. What advertisements appear during varies by viewer, and is determined by YouTube algorithms that consider the browsing history, browser settings and interests of the viewer in combination with metrics like age, gender and location. Paid advertising revenue is shared with YouTube, and accounts for about twenty percent (20%) of program revenue.

16.     The Program is a commercial enterprise, and generates income and profit for LRL, of which Reid is the sole member. Along with the subscription and advertising revenues described above, the Program promotes Reid generally, and directs attention and potential business to his other ventures, which include teaching, speaking, in-person appearances, acting and musical performances.

17.     As of May 2021, about 262,000 people subscribed to either the YouTube Channel, Facebook page, or both. Gross revenues for Reid and LRL from all activities, online and offline, are estimated to be between Forty Thousand Dollars ($40,000.00) and Sixty Thousand Dollars ($60,000.00) per month. The Program, its subscribers and its advertising revenues are the central activities upon which this income stream depends.

- 4 -

**B.      Moore and His Campaign Against Reid: Background**

18.      Moore is an individual living in Greater Cleveland who, prior to the events described in this Complaint, was entirely unknown to Reid.

19.      Beginning in December 2020, Moore began to disseminate a series of videos and live streaming videos on You Tube which have persistently, and with growing intensity, levelled defamatory allegations against Reid, including false allegations that Reid was involved or had been involved in such unlawful activities as child molestation, witness tampering, conspiracy, fraud, obtaining government financial assistance through fraudulent representations, tax evasion and/or tax fraud, and theft by deception. In addition, Moore has published, and continues to publish addition defamatory allegations not necessarily involving illegal conduct, but none-the-less calculated and likely to bring Reid's reputation into disrepute and to harm him in his profession.

20.      These statements have been repeated dozens of times in You Tube videos published by Moore, which have been widely viewed and also linked to or disseminated by third parties.

21.      The videos themselves remain on You Tube after they are initially streamed, so that an archive of false and defamatory information regarding Reid now exists online. Every day, new viewers can and do view the videos, and in many cases then repost them or link to them on other social media such as on Facebook, Twitter and elsewhere.

22.      Georgia counsel for Reid has served sent Cease and Desist letters to Moore, demanding that he stop publishing false and defamatory statements regarding Reid and take down the defamatory videos that he has already posted on You Tube.

23.      Cease and Desist Letters were sent on February 2nd, April 20th and April 27th of this year. Moore has responded to these letters by denying that his statements are defamatory, refusing to take down existing videos, and refusing to refrain from publishing new ones. He has also posted You Tube videos that make light of the Cease and Desist letters.

C.      **Moore and His Campaign Against Reid: Videos & Accusations**

24.      Moore has defamed Reid in more than two dozen videos that have been posted, and have remained available on You Tube since December 2020. Some of these videos run for less than a minute. Many run for over an hour, and some run to more than two hours duration. The videos generally follow one of two formats: brief videos, often depicting Moore as he drives a car, relating allegations against Reid in summary form, and; longer videos, in a "studio" setting with Moore seated on a chair, often with a still or live video inset "beside" him on the screen.

25.      The short videos acts as advertisements or teasers for the longer videos, which follow soon after. Moore urges viewers to tune in to his next live stream by promising to reveal salacious facts, evidence or details regarding Reid, his misdeeds and his poor character.

26.      The longer videos are structured like a call-in talk show. Moore appears in a studio setting, facing a single camera, and addresses his viewers directly. There are some variations, but Moore almost always delivers a monologue, and responds in real time to the live written comments which viewers submit, which can be seen scrolling beside the video. He sometimes takes telephone calls from viewers in real time. Sometimes Moore presents guests, by way of an audio or video link. On some occasions, guests appear on a live video feed displayed on a split screen. In several videos, Moore shares the split screen with members of what he calls "the A team," a group of guests who purport to have some special interest or expertise in online sex crimes.

27.      The A Team videos begin with a somber imitation of the narration presented during the opening credits of the popular television program Law & Order: Special Victims Unit. The knockoff narration reminds viewers that sexual offences are particularly heinous crime, and that when those crimes occur online, they are investigated by a special "A Team" comprised of Moore's guests. The narration – inevitably – ends with the signature two chord motif that concludes the opening narration of television programs in the Law & Order franchise.

28.     None of the "A Team" guests appear to have any investigative or law enforcement expertise. Nothing in the introduction would warn the viewer that the narrative is intended to be humorous, nor does the opening narration appear to be anything but a promotional element meant to lend gravity to the program and its guests.

29.     Since December 2020, Moore has live-streamed or posted dozens of videos ranging in duration from under one minute to over two-and-a-half hours. The short videos are "posted," which in the argot of You Tube means they are uploaded as complete presentations. The longer videos are "streamed," which means they are initially presented live, and later remain available as part of a video archive preserved on Moore's You Tube channel.

30.     The significant volume of videos Moore has published would make a complete, statement-by-statement recitation of his defamatory utterances both prolix and repetitious. Moore, however, returns over-and-over to the same several themes and allegations, in one form or another, throughout the sequence of videos in question. The defamatory statements presented in this Complaint do not purport to be an exhaustive catalogue of the defamatory statements Moore has made about Reid. They are, however, a broad and representative sampling, that includes the themes into which those defamatory statements may be sorted, and which together encompass the gist of those statements – which are repeated in other videos not cited here.

31.     The false and defamatory statements about Reid fall into several groups. In one way or another, Moore alleges: that Reid is a sexual predator, who has endeavored to conceal his crimes; that Reid has financially defrauded the federal government; that Reid has evaded taxation; that he has financially exploited his followers; that he is financially corrupt; and that he has acted reprehensibly toward his family, through acts of infidelity, violence and cruelty. Specific examples of the defamatory statements, sorted according to these themes, and a list of the videos in which the cited samples appear, are presented in the paragraphs that follow.

32.     Moore repeatedly asserts, both directly and through thinly veiled and unmistakable innuendo, that Reid molested a teenaged boy when he was a minister in North Carolina. This allegation appears, inter alia, in videos posted or live streamed on these dates, which contain the variations or additional allegations noted below.

A.     **On April 20, 2021**, Moore stated that Reid had a victim, that the victim had hired a lawyer, that Reid had victimized him since the victim was 14, and that Reid was so certain to be convicted for that victimization that he might-as-well be fitted for a jumpsuit. Moore also displayed, on-screen, a series of text messages by which he purported to establish that Reid had molested a boy and endeavored to suppress the memories of his victim.

B.     On **April 19, 2021**, Moore asserted that he had copies of text messages between Reid and one of his victims, and the affidavit testimony of a third party who was privy to those texts.

C.     On **April 15, 2021**, Moore, in a streaming video, warned Reid that there was no statute of limitations in North Carolina for the crimes Reid had allegedly committed.

D.     On **April 11, 2021**, Moore asserted that Reid had molested a fourteen year old boy in Raleigh, North Carolina.

E.     On **April 6, 2021**, Moore asserted that Reid masturbated while a teenaged boy was induced to watch him.

F.     On **April 1, 2021**, Moore asserted that he had seen text messages between Moore and his victim confirming the molestation, that Reid masturbated while compelling an underage boy to strip and dance for him, that Reid had been touching little boys, and that Reid had forcibly fondled an underaged boy.

G.     On **March 26, 2021**, Moore asserted or by unambiguous innuendo implied that, in videotaped comments presented on his own Program, Reid had admitted to having sexually inappropriate relations, including with an underaged boy.

Each of these allegations is false. Reid never molested an underaged boy, nor compelled a boy to masturbate in his presence, nor masturbated in the presence of a boy, nor endeavored to suppress the memories of such a victim

33.     Moore has repeatedly asserted that he has a report from the Police Department in Raleigh, North Carolina, which demonstrates that Reid was accused of, and engaged in, the sexual molestation of an underaged boy, and that that the report confirms this.

>   A.     On **April 21, 2021**, Moore asserted that the address on that police report matched one of Reid's former addresses, and that this meant that Reid was the subject of that report.

>   B.     On **April 1, 2021**, Moore briefly displayed a paper stamped with a certification of authenticity, asserting that this proved the genuineness of the alleged police report, the falsification of which would have been a felony, and thus demonstrated that Reid had engaged in predatory acts involving young boys.

>   C.     On **March 27, 2021**, Moore asserted in a streaming video that there existed a police report which confirmed that Reid had molested an underaged boy.

Moore has attempted to bolster his false allegations by referring to what he claims is contained in a Raleigh Police Report. Upon consultation with that Police Department, Georgia counsel learned that police policy forbids the public disclosure of anything but a public cover page of the report, which counsel then obtained. and which substantiates none of the charges made by Moore.

34.     Moore has repeatedly stated that Reid has committed other felonies and crimes of moral turpitude, including financial crimes against the United States, including tax fraud.

>   A.     On **April 1, 6 and 15, 2021**, and on **March 29, 2021**, Moore said in published videos that Reid defrauded the United States of $70,900.00, by obtaining financial assistance offered in connection with the present pandemic by submitting falsified documents.

>   B.     On **March 24, 2021**, Moore stated that Reid had failed to pay federal income tax and strongly implied that Reid has unlawfully evaded taxation by falsifying financial the financial records of not-for-profit entities in which he is an officer, member or shareholder.

>   C.     On **April 5, 2021**, Moore said that Reid was under IRS investigation.

These statements are false. Reid has not falsified non-profit records, evaded taxes, failed to pay income tax, nor made misrepresentations to obtain aid in connection with the ongoing pandemic.

35.     Moore has repeatedly and falsely accused Reid of domestic violence, marital infidelity, promiscuous homosexuality, financial exploitation of his former wife, and of other reprehensible acts toward members of his family, all of which were calculated to bring him into public shame and contempt, and all of which would naturally have, and have had, that effect.

A.     On **April 6 and 7, 2021**, Moore alleged that Reid had battered his own mother or "put hands on his momma."

B.     Moore asserted in several videos that Reid had financially taken advantage of or exploited his wife. On **April 6, 2021**, he asserted that Reid had locked his wife out of the very house on which she was paying the mortgage.

C.     On **April 6, 2021**, Moore also asserted that Reid had been evicted for falling behind in his rent.

D.     On **February 26, 2021**, Moore published videos which contained a stream of false allegations regarding Reid and his family life, all of which would have the effect of harming his reputation and bringing him into public disregard and contempt. These included the claims, made directly or by unmistakable innuendo: that Reid forced his wife to abort a child against her will; that he engaged in multiple extramarital and homosexual affairs; that his wife cheated on him because he was unable to satisfy her sexually, and; that he had been involved with a woman in Memphis while married, and had to cover up that affair after an auto accident involving that woman.

E.     On March 5, 2021, Moore published a video in which he alleged that Reid had failed to visit his suicidal wife in hospital, and that his wife had engaged in an extramarital affair because Reid could not sexually satisfy her.

Each of the allegations and insinuations is false.

36.     Moore has, in multiple videos, accused Reid of other financial improprieties and dishonesty, through statements of a sort both calculated and likely to bring Reid into contempt and disrepute and to expose him to public opprobrium.

A.     In videos that were posted or aired on **March 23, 2021** and **April 1, 2021**, Moore directly asserted and/or implied that Reid had failed to pay musicians in his gospel ensemble money that was owed them;

B.     In a video streamed on **March 23, 2021**, Moore said that Reid had never worked in his entire life, but had made a living by scamming others.

C.      In a video posted or streamed on **February 26, 2021**, Moore accused Reid of financially swindling his online subscribers.

D.      In a video posted or streamed on **December 3, 2020**, Moore alleged that Reid has improperly used, without authorization, the likenesses and images of third parties, and charged his subscribers to view those images behind an online paywall. Moore strongly implied that the images misappropriated involved third parties engaged in sexual activity. Moore stated that Reid had committed a felony by doing this.

The statements made by Moore, and each of them, are false. Reid has worked to earn a living, paid musicians what they were owed, has not swindled, defrauded or financially abused his thousands of willing online subscribers, and has not posted misappropriated sexual images online.

37.      Moore has falsely accused Reid, both directly and by unmistakable insinuation and innuendo, of attempting to coerce or improperly silence people Moore say are Reid's victims.

A.      On **April 6, 2021**, Moore said that Reid has done nothing in life but bully, terrorize, blackmail, extort and bribe others.

B.      On **March 23 2021**, Moore rhetorically asked Reid to name the lovers he has been paying off, implying that Reid was paying off lovers, and has acted in such a way that he need to buy their silence.

C.      On **April 20, 2021**, Moore accused Reid of bullying victims into silence, using intimidation and "head games" to prevent victims from revealing his abuse, and using various psychological tactics whereby victimizers ensure the silence of their victims.

D.      On **February 26, 2021**, Moore insinuated by innuendo that Reid bought the silence of a woman in Memphis with whom he was having an inappropriate relationship after the woman crashed his car.

These accusations, and each of them, are false. Reid has not bullied, threatened, bribed or manipulated anyone to obtain silence or suppress testimony.

38.      Moore has presented guests on his live stream who allege that they were molested by Reid, and recount what they claim are the details surrounding those events. These have appeared via audio and video, on live streams that aired on **April 20 2021** and **May 2, 2021**, which claims were false as those acts of molestation did not occur.

39.     In each instance, Moore solicited and published, and the guests provided narratives involving graphic descriptions of the molestation, by Reid, of teenaged boys, which narratives and which details were false, and would, if true, constitute crimes of moral turpitude and felonies, such that their false publication was and is defamatory.

40.     The short posted videos and the longer streamed videos all have titles, selected and published by Moore, which titles are either false and defamatory statements of fact, or innuendo which suggests – by unmistakable implication – false and defamatory statements about Reid. These are the titles under which the You Tube videos are archived on that site, and which appear as the boldface heading that identifies those videos when they are listed in response to a search on Google and other search engines. The defamatory titles include:

| | | |
|---|---|---|
| A. | **April 20, 2021** | The First Accuser of Larry Reid Speaks |
| B. | **April 19, 2021** | I have text messages between Larry Reid and one of his accusers |
| C. | **April 15, 2021** | The hypocrisy of Larry Reid |
| D. | **April 11, 2021** | Larry Reid's Victim Speaks . . . The Interview is Coming |
| E. | **April 6, 2021** | Larry Reid flew to NC to do damage control. What's he trying to hide? |
| F. | **April 6, 2021** | Domestic violence and financial schemes . . . ALLEGEDLY |
| G. | **March 31, 2021** | 24 Hours Larry Reid Exposed |
| H. | **March 29, 2021** | Got a copy of Larry Reid's police report...oh my!!! |
| I. | **March 27, 2021** | Larry Reid...When are you going to confess? |
| J. | **March 25, 2021** | Larry Reid Doesn't Want This known |
| K. | **March 5, 2021** | Larry Reid Live does more damage control but it's too late... |

| L. | **February 28, 2021** | Larry Reid Live tries to get ahead of the secrets revealed about him by the Cigar Vlogger |
|---|---|---|
| M. | **February 27, 2021** | Larry Reid is doing damage control after being exposed by the Cigar Vlogger |

41.     Moore has also published videos which contain direct or strongly implied threats of violence against Reid, and has underscored these threats by visiting Reid's home in a private, gated community in Georgia, and publishing detailed instructions on how to locate his home. In videos posted or first streamed on the following dates, Moore made threatening statements.

A.     On **February 2, 2021**, Moore warned Reid that he had "nine days to retract them lies you said about me. Or I'm a gonna put you in financial ruin."

B.     On **February 5, 2021**, Moore stated: "I can't put into words the s___ you are about to experience. You gonna get got." In another video on that date, Moore denied an intent to kill Reid, but notes, regarding the entrance to the gated community where Reid lives, that "I have the gate code." He then described visiting the area and speaking about Reid with his neighbors. In another video that day, Moore gives turn by turn directions to Reid's home.

C.     In a separate video on the same date, Moore says he in unafraid of Reid because Moore "carries heavy," and will protect himself.

D.     On **February 6, 2021**, Moore posted pictures of himself in front of Reid's house, and a picture of the security gate surrounding his community.

E.     On **March 28, 2021**, Moore filmed himself cocking a pistol, said it would "be fine if [Reid] stopped breathing," and while denying an intent to kill Reid expressed the wish that he could "put two in his chest and be done with it."

42.     All the statements, accusations, and innuendo described in the paragraphs above were made with actual malice, despite the fact that Moore knew that they were false, or acted with a reckless disregard as to the truth of falsity thereof.

43.     The statements were also made with ill will, ordinary malice, hatred, a desire to harm Reid and his reputation, and made in bad faith and without privilege, justification or duty.

44. As a direct and proximate result of the publishing and publicizing of the false and defamatory statements complained of in Paragraphs 32 through 43 above, Reid has suffered shame, humiliation, mental anguish, loss of enjoyment of life, public humiliation, a loss of reputation generally and specifically in his trades and professions – the ministry and as an online commentator and religious figure. Reid has also incurred and will incur attorney fees, and costs. Both Reid and LRL have suffered a loss of revenue, including a loss in online viewers, advertisers and subscribers, with all these economic losses well in excess of $75,000.00.

## – COUNT I: DEFAMATION –

45. Plaintiffs restate as if fully repeated here each and every averment, allegation, statement and assertion contained in Paragraphs 1 through 44 of this Complaint, above.

46. The statements identified in Paragraphs 32 through 43, and their subparts, were and are false and defamatory, and in making those statements in videos posted and/or streamed on You Tube, Moore published those statements online.

47. Moore published those statements without privilege or the authorization to do so.

48. Some of the statements complained of in Paragraphs 32 through 43, and their subparts, were and are defamatory per se, because those statements, variously, state that Reid committed felonies and/or crimes of moral turpitude, including: child molestation; tax evasion; tax fraud; fraud upon the United States; falsification of official documents, and; obstruction of justice through the manipulation or intimidation of victims and witnesses.

49. Some of the statements complained of in Paragraphs 32 through 43, and their subparts, were and are defamatory per se because they impugn Reid and his character as it relates to his trade or profession, to wit, both as a member of the ministry and in his online activities, both ministerial and as a commentator and online personality.

- 14 -

50.     Other defamatory statements include: assertions that Reid is dishonest; has engaged in extra marital affairs; has engaged in promiscuous sexual conduct outside of marriage; has scammed his subscribers; has made his living through scams and exploitation; has manipulated the finances of non-profit entities; has failed to pay musicians the money they were due; has failed to pay his creditors, and; has, without authorization, charged viewers for the ability to see illicitly obtained, asexually explicit content online.

51.     Some of the statements complained of in Paragraphs 32 through 43, and their subparts, were and are defamatory because they have the natural effect of exposing Reid to public hatred, opprobrium and contempt, such as: allegations that he forced his wife to perform an unwanted abortion; drove his wife from the home on which she paid the mortgage; bought or coerced the silence of sexual partners; beat his wife; beat his mother, and; engaged in sexual activity in front of teenaged boys.

52.     All of the statements complained of were libelous, because while spoken, they remain in a permanent record, and are archived and available online in a fixed medium, which can be accessed by the public at any time.

53.     The statements to which reference is made in Paragraphs 49 to 51, may also be defamatory per quod, in that Moore employs unsubtle insinuation, innuendo and inference in making his accusations.  Each group of statements may also be defamatory per se in multiple ways, and not only for the reasons summarized in Paragraphs 48 through 51.

54.     Moore published the statements complained of in Paragraphs 32 through 43, and their subparts, with actual malice, that is, knowing them to be false, or at least while acting with a reckless disregard for their truth or falsity, and also with express malice, that is with ill will, hatred, and a desire or intention to harm.

55.     As a direct and proximate result of the publication of the statements complained of in Paragraphs 32 through 43, and their subparts, the Plaintiffs have suffered special damages, including the damages described in Paragraph 44 of this Complaint, above.

**– COUNT II: FALSE LIGHT INVASION OF PRIVACY –**

56.     Plaintiffs restate as if fully repeated here each and every averment, allegation, statement and assertion contained in Paragraphs 1 through 55 of this Complaint, above.

57.     The statements complained of in Paragraphs 32 through 43, and their subparts, place Reid in a false light that is highly offensive to him and would be highly offensive to any reasonable person about whom such statements were made.

58.     In making the statements complained of, Moore knew that those statements were false, or acted with reckless disregard for their truth or falsity, and further knew, or acted with reckless disregard for the fact that those statements would put Reid in a false and highly offensive light before the public.

59.     Moore has not only published, but also publicized, the statements complained of. The You Tube videos are available to the public at large, and have been viewed numerous times. The videos specifically identified in this Complaint have each been viewed between 2,000 and 19,000 times as of May 11, 2021, and the statements complained also in appear in other videos publicized by Moore, which have reached a similar audience. In addition, the videos identified in this Complaint have been republished on You Tube and/or linked to by social media accounts connected with no fewer than eleven other You Tube channels.

60.     As a direct and proximate result of the publication of the statements complained of, Reid has been placed in a false light before the public and suffered the damages identified in Paragraph 44 of this Complaint.

## – COUNT III: PUBLIC DISCLOSURE OF PRIVATE FACTS –

61.     Plaintiffs restate as if fully repeated here each and every averment, allegation, statement and assertion contained in Paragraphs 1 through 60 of this Complaint, above.

62.     The publication by Moore of certain allegations regarding Reid would, even if true, constitute the public disclosure of private facts.

63.     As noted in Paragraph 59, above, Moore has widely disseminated the statements complained of to a global internet audience, and thousands have already viewed them. Reid denies the veracity of every statement, but to the extent necessary to state this Count III, pleads in the alternative that by giving them publicity, Moore has made public certain private facts about Reid.

64.     Information regarding Reid's marriage, divorce, his wife's abortion, his tax status, his dealings with creditors, his financial relations with his wife, his sexual orientation, and his alleged extra-marital activities concern highly private matters, and are subjects in which the public has no legitimate interest. The public disclosure of facts and/or statements about those subjects would be highly offensive to a reasonable person and highly offensive to Reid.

65.     As a direct and proximate result of the publication of the statements complained of, Moore has revealed to the public private facts, or purported facts, about Reid, and caused him to suffer the damages identified in Paragraph 44 of this Complaint.

## – COUNT IV: DECEPTIVE TRADE PRACTICES –

66**.**     Plaintiffs restate as if fully repeated here each and every averment, allegation, statement and assertion contained in Paragraphs 1 through 65 of this Complaint, above.

67.     Moore is a prodigious creator of online videos, who has published hundreds of hours of video on a variety of matters beside Reid. His online activities are a vocation within the meaning of that term as used in Ohio Rev. Code § 4165.02(A). Those activities were willful within the meaning of Ohio Rev. Code § 4165.03 (B).

68.     In the manner and by the means set forth in Paragraphs 32 through 43, and their subparts, Moore has repeatedly disparaged the services and business of Reid through false representations of fact, to wit, the online commentary and ministry of Reid as previous described, and LRL and its product, the videos produced and streamed by Reid on You Tube.

69.     This disparagement constitutes a deceptive trade practice within the meaning of Ohio Rev. Code § 4165.02 (A)(10), which may be enjoined by this Court, without proof of economic damages, pursuant to Ohio Rev. Code § 4165.03 (A)(1), and for which actual damages may be awarded pursuant to Rev. Code § 4165.03 (A)(2).

6706.   As a result of the willful actions of Moore, as described herein, the Plaintiffs, and each of them, have surfed the economic losses specified in Paragraph 44 above.

– PRAYER –

WHEREFORE, having plead their claims against him, the Plaintiffs, and each of them, demand judgment in their favor against Moore as follows:

A.     For Reid, on Counts I, II and III of the Complaint, and for LRL on Count IV of the Complaint, actual, compensatory damages in an amount not less than $75,000.00, to be proved at trial;

B.     For exemplary and/or punitive damages, in favor of Reid and against Moore, on Counts I, II and III of the Complaint;

C.     For Reid, on Counts I, II and III of the Complaint, a declaratory judgment finding that the statements complained of constitute defamation unprotected by the First Amendment;

D.     For LRL, on Count IV of the Complaint, a declaratory judgment finding that the statements complained of constitute a deceptive trade practice unprotected by the First Amendment;

E.     For Reid, on Counts I, II and III of the Complaint, and after a full hearing and determination on the merits, a mandatory injunction requiring Reid, and those in active consort with him who are served with the injunction, to take the contested videos and all other videos containing defamatory content involving Reid off line, and an injunction prohibiting Moore and those in active consort with him and served with the injunction from publishing or publicizing the same or similar statements, in any medium, in the future;

- 18 -

F.    For LRL, on Count IV of the Complaint, and pursuant to Ohio Rev. Code § 4165.03 (A)(1), after a hearing and adjudication on the merits, an injunction prohibiting Moore from engaging in deceptive trades practices against it;

G.    For both Plaintiffs, on all applicable counts, attorney fees and costs of suit, and;

H.    For such other relief, be it legal or equitable, as the Court in the sound exercise of its discretion deems just.

Respectfully submitted

/s/ Raymond V. Vasvari, Jr.

**Raymond V. Vasvari, Jr.** (0055538)
  vasvari@vasvarilaw.com
**K. Ann Zimmerman** (0059486)
  zimmerman@vasvarilaw.com
**VASVARI | ZIMMERMAN**
20600 Chagrin Boulevard
Suite 800 Tower East
Shaker Heights, Ohio 44122-5353
Telephone:  216.458.5880
Telecopier:  216.302.3700

Attorneys for the Plaintiffs

**– JURY DEMAND –**

**T**he Plaintiffs, and each of them, pursuant to Fed. Civil Rule 38, hereby demand trial by a jury comprised of the maximum number of jurors permitted by law on each Count so triable.

Respectfully submitted

/s/ Raymond V. Vasvari, Jr.

**Raymond V. Vasvari, Jr.** (0055538)
   vasvari@vasvarilaw.com
**K. Ann Zimmerman** (0059486)
   zimmerman@vasvarilaw.com
**VASVARI | ZIMMERMAN**
20600 Chagrin Boulevard
Suite 800 Tower East
Shaker Heights, Ohio 44122-5353
Telephone:  216.458.5880
Telecopier:  216.302.3700

Attorneys for the Plaintiffs

Dated: Shaker Heights, 12 May 2021

– VERIFICATION –

STATE OF GEORGIA   }
                   }     §§      DECLARATION OF LARRY REID
County of Fulton   }

The undersigned Larry Reid, having been duly counseled and cautioned, does hereby testify and depose, under penalty of perjury under the laws of the United States.

1.      My name is Larry Reid. I am an adult competent to testify in a court of law, and under no disability which would impair my ability to do so truthfully and completely.

2.      I am the Plaintiff named in the Complaint to which this Declaration is attached for purposes of verification. I am also the sole member in and chief operating officer of Larry Reid Live, L.L.C., and in both my personal and corporate capacities, I have personal knowledge of the facts, averments and allegations set forth in that Complaint.

3.      I have carefully reviewed the allegations in the Complaint to which this Declaration is attached for purposes of verification, and have been given the opportunity to call for the revision, redaction or amendment of any statement or allegation therein. To the best of my knowledge and belief, the facts, averments and allegations set forth in the Complaint, including the averments which deny the veracity of statements made about me by Darryl Moore, are true and accurate.

FURTHER DECLARANT SAYETH NAUGHT

I, the undersigned Larry Reid, pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States, hereby declare that the statements in this Declaration, and by reference the statements and averments set forth in the Complaint to which it is attached for purposes of verification, are true and correct to the best of my knowledge and belief, in witness whereof I have signed and dated this Declaration in City of Atlanta, County of Fulton, State of Georgia on the date indicated below.

*Larry D. Reid*
_____          05/12/2021
Larry Reid                           _____
                                     Date