Confidential External Discussion Draft
Version A – Last Revised 12/13/21 5:23 PM

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is hereby voluntarily entered by the following persons and entities: **Larry D. Reid** ("Reid"), a natural person and a resident of Atlanta, Fulton County, Georgia, individually; **Larry Reid Live, LLC** ("LRL"), a limited liability company organized and operating under the laws of the State of Georgia, and; **Darryl Moore** ("Moore") a natural person and a resident of Cleveland, Cuyahoga County, Ohio (collectively **"the Parties"**). The Parties enter this Agreement and contract, on behalf of themselves, and each on behalf of his, her or its respective heirs, assigns, subrogees, attorneys, agents, and/or successors in interest, and any person or entity entitled to assert any claim, right or action by, through or on behalf of them, under statute or common law, on any basis whatever

A. RECITALS

1. **WHEREAS Reid** and **LRL** (collectively **"the Plaintiffs"**) commenced an action against **Moore** in the United States District Court for the Northern District of Ohio, Eastern Division captioned Larry Reid, et al. v. Darryl Moore, Case No. 1:21–cv–00991 upon the docket of that Court, in which the Plaintiffs asserted against Moore claims for defamation, false light invasion of privacy, public disclosure of private facts and deceptive trade practices under Ohio law ("**the Subject Litigation**"), and;

2. **WHEREAS,** on August 29, 2021, Moore brought a counterclaim against the Plaintiffs asserting defamation, and;

3. **WHEREAS** the dispute between the parties was referred to mediation, and the Parties, through and with their respective attorneys, on December 6, 2021 engaged in a mediation conference conducted by United States Magistrate Judge Jonathan D. Greenberg, during which the Parties negotiated a settlement of their respective claims, the principal aspects of which settlement were recited on the record with the Court, the Parties and their respective attorneys, present via videoconference, and;

4. **WHEREAS** the Parties wish to resolve the dispute between them without further litigation on the terms agreed to during the Settlement Conference, and;

5. **WHEREAS** Magistrate Judge Greenberg has ordered the Parties to memorialize their agreement in a written settlement agreement, to execute such an agreement, and to dismiss their respective claims and counterclaims, with prejudice, at or before the close of busines on December 20, 2021;

**THEREFORE,** the Parties, and each of them, in exchange for the consideration described herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, do agree and covenant as follows:

PLAINTIFF'S EXHIBIT 1

## B. DEFINITIONS

1. **Internet** shall mean the international, interconnected network of computer networks which permit information to be shared and accessed through the Internet Protocol Suite and the programs and protocols associated therewith, and shall be read broadly to embrace all common usages of that term.

2. **World Wide Web** ("the Web") shall mean the universe of web pages, files and other intelligence and content that may be accessed via the Internet using hyperlinks, uniform reference locators (URLs) and other means, through the use of web browsers, and applications designed to facilitate the location and retrieval of such information, and shall be read broadly to embrace all common usages of that term.

3. **YouTube** shall mean the video streaming and sharing service operated by YouTube, which is a subsidiary of Google LLC, and the content on which may be accessed through the Web at the URL www.youtube.com.

4. **Vlog** shall mean a website or social media account where a user posts videos that may be accessed and viewed via the Web.

5. **Blog** shall mean a website or social media account where a user posts text, videos, still images or other content that may be accessed and viewed via the Web.

6. **Social Media** shall mean technologies that facilitate the creation and sharing of information, ideas, interests, and other forms of expression through virtual communities and networks, wherein one user posts or uploads information that thereafter may be accessed and viewed by other users. Social media sites and providers include, without limitation, 4chan; 8kun; Reddit; DeviantArt; Discord; Duolingo; Facebook; Flickr; Gab; Goodreads; Google Hangouts; Grindr; Hello; ICQ: Instagram; LinkedIn; Meetup; MeWe; Nearby; NextDoor; Parler; Pinterest; Quora; SoundCloud; Snapchat; Stack Overflow; Tik Tok; Tumblr; Twitch; Twitter; Weibo; WhatsApp; Whisper; WordPress, and; YouTube.

7. **User Generated Content** shall mean any video, audio, still image, artwork, text, interactive text, multimedia presentation, slideshow, achieve, collection of hyperlinks, comments, responses to comments, moderated discussions, advertisements, solicitations, or other form of intelligence or information that may be accessed through the Web, including without limitation material posted to or accessible via social media.

8. **Livestream** shall mean to broadcast a video via the Web and/or Internet while it is being created, as opposed to after it has been recorded, including via YouTube, whether or not the video and/or its associated content is available for later retrieval by members of the public or specially authorized persons once it has been streamed.

9. **Metadata** shall mean any data that provides information about a computer or other digital file but does nor form a part of the content of the file to which it relates..

10. **Comments** shall mean any remarks, comments, or reactions posted on YouTube in connection with a given video by viewers of that video, whether posted live during its first streaming or afterward.

11. **Interactive Viewer Comments** shall mean comments posted to a YouTube channel while a video is being streamed on that channel, to which the channel owner may reply in real time.

12. **Key Words** shall mean metadata added to a YouTube or other online video to facilitate it appearing in response to a query to an internet search engine such as Google.

13. **Relatives** shall mean persons related to the Party in question, through blood or marriage, unto the second degree of kinship, i.e. his: wife, son, daughter, mother, father, sister, brother, aunt, uncle, niece, nephew, grandmother, grandfather, cousin, brother-in-law, sister-in-law, father-in-law, or mother-in-law. It shall also extend to any person residing in the principal residence of the Party in question, regardless of kinship.

14. **Employee** shall mean any person who is paid by the Party in question, on a full or part time basis, including persons who are routinely or repeatedly hired or contracted with to perform the same or similar services on more than one occasion, and shall be read broadly to include persons whose compensation is reported to the Internal Revenue Service on either IRS Form W-2 or IRS Form 1099.

15. **Take Down** shall mean to remove from online access, to the fullest extent possible, so as to make access unavailable via the Internet and/or the Web, any and all of the following: all user generated content, comments, interactive comments, key words, metadata, text, video files, audio files, blogs, social media content, images, drawings, hyperlinks, indices and information of any sort. This term shall be construed broadly, and read to impose an affirmative obligation on the Parties, and each of them, to remove such materials, and render them inaccessible and unavailable, with deliberate speed and diligence.

16. **Relate** and any variant thereof (e.g., relating; related; relates; relating to), shall mean to mention, constitute, contain, summarize, describe, concern, refer to, allude to, or address in any way the subject matter thereof.

17. **Party or Parties Adverse to Them** shall mean: when applied to Reid and/or LRL, Defendant Moore, and; when applied to Moore, shall mean Plaintiffs Reid and/or LRL.

C. **PRINCIPAL TERMS**

1. On or before the end of business, no later than 5:00 p.m. Eastern Standard Time, on Monday, December 20, 2021, the Parties, and each of them, shall Take Down any and all content which they have published via the Internet and/or Web, which remains subject to their control, that in any way mentions, involves, describes, refers, relates to, involves or pertains to the Party or Parties adverse to them in this litigation.

    a.    Moore shall take down all such content regarding Reid, LRL, or both of them, as well as any of their relatives and/or employees.

    b.    Reid and LRL, and each of them, shall take down all such content regarding Moore, and/or his relatives and employees.

    c.    Once taken down, the content shall never be made available online via the Internet or on the Web.

2. The Parties, each and all of them, shall forever refrain from creating, publishing and/or distributing via the Internet and/or the Web, content, user generated content, comments, interactive comments, metadata, keywords, hyperlinks, indices or other information that that in any way mentions, involves, describes, refers, relates to, involves or pertains to any of the following:

    a.    The Party or Parties Adverse to Them in this litigation;

    b.    Any relative of a Party Adverse to Them in this litigation, or;

    c.    Any employee of a Party Adverse to Them in this litigation.

3. The Parties, each and all of them, shall forever refrain from visiting, contacting or communicating with any of the following:

    a.    The Party or Parties Adverse to Them in this litigation;

    b.    Any relative of a Party Adverse to Them in this litigation, or;

    c.    Any employee of a Party Adverse to Them in this litigation.

For purposes of this provision, contacting and visiting shall be read to include appearing or lingering at, or loitering near the home, place of business or place where work is being performed by any of the persons herein protected from communication and contact, whether or not the person in question is on site at the time.

4. The Parties, through their respective attorneys, shall dismiss with prejudice each of their respective claims and counterclaims against the Party or Parties Adverse to Them, by causing a Joint Stipulated Entry of Dismissal with Prejudice to be filed in the Subject Litigation no later than 5:00 p.m., E.S.T. on Monday, December 20, 2021.

5. In consideration of the terms and promises set forth in Section C.6 of this Settlement Agreement, Reid, LRL and each of them hereby release all claims, demands, rights, and/or causes of action they now have, or may have had against Moore, which accrued at any point prior to the execution of this Settlement Agreement, whether known or unknown, asserted or unasserted, vested or contingent, and whether sounding in law or in equity. Reid and LRL do so for themselves, their heirs, assigns, attorneys, successors in interest, agents and any and all persons or entities claiming or asserting an interest for, by or through them, in their respective names or on their behalf.

6. In consideration of the terms and promises set forth in Section C.5 of this Settlement Agreement, Moore hereby releases all claims, demands, rights, and/or causes of action he now has, or may have had against Reid, LRL, and either or both of them, which accrued at any point prior to the execution of this Settlement Agreement, whether known or unknown, asserted or unasserted, vested or contingent, and whether sounding in law or in equity. Moore does so for himself, his heirs, assigns, attorneys, successors in interest, agents and any and all persons or entities claiming or asserting an interest for, by or through him, in his name or on his behalf.

7. The Parties agree that the Judge James Gwin of United States District Court for the Northern District of Ohio, or such other judicial officer as may succeed or be designated by him, shall retain continuing jurisdiction over the Subject Litigation for purposes of enforcing the terms of this Settlement Agreement, notwithstanding the dismissal of the Subject Litigation.

**D.     Additional Terms**

1. Nothing in this Settlement Agreement shall be construed as an admission by any party hereto regarding the truth of any claim asserted in the Subject Litigation, or of his, her or its liability in connection therewith.

2. This Settlement Agreement is intended to cover, include and release all future injuries or other conditions, whether or not presently known to the Parties, arising under, from or in connection with any claim or counterclaim that was asserted or could have been asserted in the Subject Litigation.

3. This Settlement Agreement contains the entire agreement between and among the Parties hereto. The terms of this Settlement Agreement are contractual and not merely recitals. No other promises or representations, not contained herein, have been made in exchange for or consideration of this Settlement Agreement.

4. This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Ohio, and shall be construed most broadly, to preclude suit for every claim of any kind, known or unknown, which was or could have been asserted by or against any of the Settlement Agreement in the Subject Litigation.

5. The Parties acknowledge, understand and agree this Settlement Agreement is the product of negotiations between them and their respective attorneys, and that through their respective counsel, the Parties have contributed to the content of this Settlement Agreement. The Parties agree that any rule of contract construction that requires ambiguities in this Settlement Agreement to be construed against the drafter hereof will not be applicable in any dispute regarding the terms of this Settlement Agreement.

6. Each person signing this Settlement Agreement represents and warrants that he has been duly authorized and has direct requisite authority to execute and deliver this Settlement Agreement on behalf of and bind the respective Parties to its terms and conditions, and has done so of his own free will and without coercion or duress. Each Party represents and warrants that he she or it has full authority and capacity to release and discharge the matter set forth herein on its behalf, and has had an opportunity to consult with its counsel and professional advisors regarding this Settlement Agreement.

7. This Settlement Agreement may be executed in one or more counterparts, and each such counterpart shall for all purposes be deemed an original, and all such counterparts shall constitute one and the same Settlement Agreement. A signature on a counterpart of the Settlement Agreement transmitted by facsimile, email, or similar electronic means shall be deemed an original for all purposes.

8. This Settlement Agreement shall be valid and take effect when signed by or behalf of the last party hereto to execute a counterpart hereof.

9. The deadlines for completion, execution and filing expressed in this Settlement Agreement are material, and each Party shall make his or its best efforts to comply with those deadline in advance, recognizing that time is of the essence.

10. Each of the provisions in this Settlement Agreement is material, and should any term be stricken therefrom by any agency, court or tribunal, it is the intention of the Parties that the Settlement Agreement itself will thereby become void.

11. All communications by, to, from, between or among the Parties regarding this Settlement Agreement shall be made through and between their respective attorneys below.

E. **Execution**

Wherefore, having freely negotiated the terms of this Settlement Agreement, and intending to be bound hereby, the Parties have signed below on the dates indicated below, with the signature of their attorneys indicting that counsel have reviewed and approved this Settlement Agreement as to both form and content.

_____        _____
Larry D. Reid, Individually                        Darryl Moore, Individually

                                                                12/17/2021
_____        _____
Dated                                                       Dated

                                                                _____
                                                                Frederick D. Middleton

_____        12-17-21
Larry Reid Live, LLC, a Georgia                _____
Limited Liability Company by                    Dated
Larry D,. Reid, Its Sole Member

_____
Dated


_____
Raymond V. Vasvari, Jr.

_____
Dated

-6-